```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DONALD WATKINS, JR.           :     CIVIL ACTION
                              :
         v.                   :
                              :
ELICA BLOCKER, et al.,        :     NO. 06-3775
```

MEMORANDUM AND ORDER

McLaughlin, J.                                    March 14, 2007

In this suit, the plaintiff Donald Watkins, Jr., acting pro se, challenges a six-year delay in obtaining a hearing concerning the custody of his son.  The three defendants, the Philadelphia Court of Common Pleas, Family Court Division; its Supervising Judge, the Honorable Margaret Theresa Murphy;, and a court employee, Elica Blocker, have moved to dismiss this suit on immunity and abstention grounds.  For the reasons set out below, the Court will grant the motions in part and will dismiss all claims against the Philadelphia Family Court and Judge Murphy, as well as all claims for injunctive relief against Ms. Blocker.  The Court will deny the motions, however, as to Mr. Watkins' claims for monetary relief against Ms. Blocker in her personal capacity.


I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The central allegation of Mr. Watkins' complaint is that Ms. Blocker, his child's maternal grandmother and an

employee at the Philadelphia Family Court, improperly used her influence at Family Court to retain custody of Mr. Watkins' son by delaying a hearing on Mr. Watkins' petition to obtain custody, while at the same time wrongly obtaining orders requiring him to pay child support.

The complaint alleges that Ms. Blocker filed for temporary custody of Mr. Watkins' son in November of 1993, while Mr. Watkins was incarcerated at Graterford Prison.  After his release from prison in July 1994, Mr. Watkins and Ms. Blocker stipulated with Family Court that Ms. Blocker would have temporary primary physical custody of the child, with Mr. Watkins having partial custody every weekend.  Mr. Watkins was then re-incarcerated for parole violations and remained in Graterford until December 1997.  Compl. ¶¶ 6-10.

After his second release from prison, Mr. Watkins resumed his attempts to have partial custody of his child on weekends, in accordance with the 1994 stipulated custody order. Mr. Watkins alleges that Ms. Blocker repeatedly frustrated his efforts to see his son, which resulted in his filing a contempt complaint with the Family Court in July 1998.  After a custody hearing in December 1998, Mr. Watkins and Ms. Blocker entered another stipulated custody order, allowing Mr. Watkins to have custody of his son every other weekend.  Mr. Watkins alleges Ms. Blocker again attempted to frustrate his attempts to take custody

of his son on weekends, including moving her address without notifying him.  Compl. ¶¶ 11-15.

On April 14, 2000, Mr. Watkins filed a Special Relief Application in Philadelphia Family Court for full custody of his son.  Mr. Watkins alleges that on April 27, 2000, an order was issued for an investigation of the child's mother to determine if it was appropriate for her to have full custody, although the child's mother had never filed for custody.  Mr. Watkins does not allege whether that investigation was ever conducted or completed.  Mr. Watkins alleges that his April 2000 custody application was never acted upon and that it has remained pending, without a hearing, for six years, up through the filing of his complaint in August 2006.  Compl. ¶¶ 19-21.

Mr. Watkins' complaint alleges that in the fall of 2005, while his application for custody remained pending without a hearing, Ms. Blocker filed a complaint against him for child custody payments.  A hearing in that matter was promptly scheduled, and a bench warrant issued on November 23, 2005, when Mr. Watkins failed to appear.  Mr. Watkins appeared at a subsequent hearing in February 2006 and was ordered to pay support of $23.00 a week.  A conference hearing was held in his support matter in March 2006 and another support hearing was held on May 22, 2006.  When Mr. Watkins did not appear at the May

hearing, a bench warrant was issued. Another support hearing was held on August 22, 2006. Compl. ¶¶ 21-25, 30-32.

On April 12, 2006, Mr. Watkins wrote to the Pennsylvania Department of Welfare, alleging, in part, that Ms. Blocker was improperly receiving welfare benefits by representing to the Department that Mr. Watkins was refusing to provide child support and had deserted his child, when, in fact he had been seeking full custody of his son. The letter suggested that Ms. Blocker be investigated for welfare fraud. The letter also protested the Philadelphia Family Court's six-year delay in scheduling a hearing on Mr. Watkins' custody application and suggested the delay was caused by Ms. Blocker's influence with the court. Copied on the letter was the Honorable Kevin Dougherty, Administrative Judge of the Philadelphia Family Court. Compl. ¶¶ 26-27; Exhibit J.

Mr. Watkins received separate responses to his letter from Judge Dougherty and from the Pennsylvania Department of Public Welfare. Judge Dougherty's response letter of April 21, 2006, said he was forwarding Mr. Watkins' concern to the Honorable Margaret Theresa Murphy, Supervising Judge of the Family Court, to investigate. Mr. Watkins wrote to Judge Murphy on August 22, 2006, enclosing a copy of his April 12, 2006, letter and Judge Dougherty's response and asking about the status of her investigation. Compl. ¶¶ 28, 33, Exhibits M, P.

On August 24, 2006, Mr. Watkins filed this suit, seeking injunctive and monetary relief for violations of his constitutional rights under 42 U.S.C. § 1983.[1]

Mr. Watkins' complaint alleges the defendants "arbitrarily and capriciously fail[ed] to entertain Plaintiff's application for full custody effectively blocking Plaintiff's access to the court" in violation of the First and Fourteenth Amendments.  Compl. ¶ 45.  The complaint names Judge Murphy as a defendant in both her official and personal capacities, alleging she acquiesced in the violation of Mr. Watkins' right of access to the courts by failing to order a hearing on his custody petition.  Compl. ¶ 39.  It also names Ms. Blocker in her official and personal capacities and alleges that she used her position and influence as a Family Court employee to prevent plaintiff from having a custody hearing in Family Court.  Compl. ¶ 38

Mr. Watkins' complaint sought both injunctive relief, in the form of a Temporary Restraining Order and Preliminary Injunction, as well as monetary relief for the alleged violations

---

[1] At the hearing on Mr. Watkins' motion for a preliminary injunction, held September 28, 2006, counsel for the Philadelphia Family Court informed this Court that, after the filing of Mr. Watkins' complaint, Family Court scheduled a hearing in his custody matter for September 20, 2006, which was then rescheduled for November 2, 2006, due to a failure to provide notice to all parties. Tr. of Sept. 28, 2006, Hearing at 4-6. No further submissions have been made to this Court reflecting the status of that hearing or its outcome.

of his right of access to the courts.  The injunctive relief requested included an order requiring the Family Court to act on his custody application, an order requiring the Family Court to stop the ongoing proceedings on his child support obligations, and an order terminating Ms. Blocker's employment with the Family Court.  Tr. of August 24, 2006, Hearing at 3-6; Tr. of September 28, 2006, Hearing at 24-25.  The Court denied Mr. Watkins' Motions for a Temporary Restraining Order and for a Preliminary Injunction after separate hearings in open court.  Mr. Watkins filed a timely appeal of the order denying a preliminary injunction to the United States Court of Appeal for the Third Circuit, and the appeal remains pending.

II.   <u>LEGAL ANALYSIS</u>

Mr. Watkins' suit, seeking to enjoin a state court from conducting on-going judicial proceedings and seeking damages against a state court judge and a state court employee, directly implicates an array of immunity and abstention doctrines, all designed to constrain the ability of federal courts to interfere with or review the propriety of state judicial actions.  In deciding whether Mr. Watkins' claims can go forward in the face of these doctrines, the Court will accept all the allegations in his complaint as true and will construe them in the light most

favorable to him.  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249 (1989).

Before considering the merits of the defendants' motions, the Court must determine if it has jurisdiction to decide them in light of Mr. Watkins' pending appeal.  Although the filing of a notice of appeal ordinarily divests a district court of jurisdiction, the filing of an interlocutory appeal from an order denying a preliminary injunction does not prevent a district court from proceeding to determine the action on the merits.  United States v. Price, 688 F.2d 204, 215 (3d Cir. 1982); see also Wright, Miller & Cooper, 16 Federal Practice & Procedure § 3921.2 (2007).  The Court therefore retains jurisdiction to decide the defendants' motions to dismiss, even though dismissing Mr. Watkins' claims for injunctive relief may moot his appeal.

    A    <u>Claims against the Philadelphia Family Court</u>

Defendant Philadelphia Family Court argues that all claims against it should be dismissed because it is immune from suit under the Eleventh Amendment and because it is not a "person" subject to liability under 42 U.S.C. § 1983.  This Court

agrees and will dismiss Mr. Watkins' claims against this defendant in their entirety.[2]

The Eleventh Amendment to the United States Constitution immunizes states from being sued in federal court by their own citizens or by citizens of another state, absent consent to be sued. Congress can abrogate Eleventh Amendment immunity if it does so unequivocally and pursuant to a valid grant of constitutional authority, but Congress did not abrogate Eleventh Amendment immunity in enacting 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). For Eleventh Amendment purposes, the Philadelphia Family Court is considered an arm of the state. Under the Pennsylvania constitution, all Pennsylvania courts are part of a "unified judicial system" under the general supervisory and administrative authority of the Pennsylvania Supreme Court. Pa. Const. art V, §§ 1, 2, 10. The Philadelphia Court of Common Pleas and all its

---

[2] The defendants' Motions to Dismiss also sought to dismiss Mr. Watkins' complaint on Rooker-Feldman and Pennhurst II grounds. At the preliminary injunction hearing, the defendants withdrew their Rooker-Feldman argument, recognizing that the doctrine only applies where there is a final state court judgment and that here the state custody proceedings at issue were still on-going. Tr. of Sept. 28, 2006, Hearing at 6. The defendants have not withdrawn their argument based on Pennhurst v. Halderman, 465 U.S. 89, 106 (1984) (Pennhurst II). That case, however, is inapplicable here. Pennhurst II held that the Eleventh Amendment barred a federal court from granting prospective injunctive relief against a state based on state law. Id. at 117. This case, however, alleges only violations of federal law.

divisions, including the Philadelphia Family Court, are therefore part of state government, not city government, and are protected by Eleventh Amendment immunity.  <u>Benn v. First Judicial Dist. of Pa.</u>, 426 F.3d 233, 240 (3d Cir. 2005).

Mr. Watkins' claims against the Philadelphia Family Court must also be dismissed because the court is not a "person" subject to liability under 43 U.S.C. § 1983.  Section 1983 imposes liability upon "[e]very person" who, under color of law deprives someone of a right, privilege, or immunity secured by the Constitution or other laws.  States and divisions of state government are not "persons" for purposes of § 1983 liability.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 64 (1989).  Because of Pennsylvania's unitary court system, Pennsylvania courts, including the Philadelphia Court of Common Pleas and its divisions, are considered state entities and are therefore not "persons" subject to suit under § 1983.  <u>Callahan v. City of Philadelphia</u>, 207 F.3d 668, 670 (3d Cir. 2000).

    B    <u>Claims against the Honorable Margaret Theresa Murphy</u>

Judge Murphy has been sued in both her personal and her individual capacities. Claims against Judge Murphy in her official capacity must be dismissed for the same reasons that require dismissal of claims against the Philadelphia Family Court.  A suit against a state official in his or her official

capacity "is not a suit against the official but rather is a suit against the official's office" and, as such, "it is no different from a suit against the State itself." Will, 491 U.S. at 71. Because the Philadelphia Family Court is an arm of the state, claims against Judge Murphy in her official capacity are claims against the state and are therefore barred by the Eleventh Amendment and by the definition of a "person" in 42 U.S.C. § 1983. Benn, 426 F.3d at 240; Callahan, 207 F.3d at 670.

Claims against Judge Murphy in her personal capacity, however, are not considered claims against the state and are not affected by the Eleventh Amendment or excluded by the definition of a "person" under § 1983. Injunctive claims against Judge Murphy may nonetheless be barred by a judicial exclusion in § 1983, itself, and monetary claims against her may be barred by judicial immunity.

Section 1983 was amended in 1996 to add an express limitation against enjoining judges. The amended language provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Absent "an allegation that a declaratory relief was violated or that declaratory relief is unavailable," a claim for injunctive relief under § 1983 against a judge will be barred, as long as

10

the requested relief concerns actions taken in a judge's judicial capacity.  Azubuko v. Royal, 443 F.3d 302, 304 (3d Cir. 2006). Because there is no issue of declaratory relief here, Mr. Watkins' claims for injunctive relief against Judge Murphy will be barred as long as they concern actions taken in her judicial capacity.

Determining whether an act is taken in a judicial capacity requires looking at "the nature of the act itself, i.e., whether it is a function normally performed by a judge" and at "the expectations of the parties, i.e., whether they dealt with the judge in his [or her] judicial capacity."  Stump v. Sparkman, 435 U.S. 349, 362 (1978).  Applying this analysis, the United States Supreme Court has cautioned that acts "involved in supervising court employees and overseeing the efficient operation of a court" may be important to a sound adjudicative system, but they are "not themselves judicial or adjudicative." Forrester v. White, 484 U.S. 219, 229 (1988) (decision to demote and discharge court employee not adjudicative).

Here, Judge Murphy never presided over the custody matter concerning Mr. Watkins' son, but rather is being sued in her capacity as the Supervising Judge of the Philadelphia Family Court.  The allegations against her in Mr. Watkins' complaint are that she "acquiesced in the violation of Plaintiff's rights" and "implemented policies, rules regulations, memorandum, directives,

11

practices and/or usages" which violated Plaintiff's constitutional rights.  Compl. at ¶ 5.  At the preliminary injunction hearing, Mr. Watkins elaborated on these allegations, stating that Judge Murphy "failed to act" after learning of Mr. Watkins' complaints about the delay in his custody hearing and about the disparate treatment of his custody hearing and Ms. Blocker's request for child support.  Tr. of September 29, 2006, Hearing at 17-18.

Judge Murphy's alleged actions (or failures to act) here are judicial in nature.  Supervisory decisions regarding how courts function are adjudicative.  See Roth v. King, 449 F.3d 1272, 1286-87 (D.C. Cir. 2006) (holding that supervising judges who created panels of qualified attorneys to handle family court cases acted in their judicial capacity, rather than their administrative capacity, and were therefore covered by the amendment to § 1983).  Mr. Watkins is alleging that Judge Murphy failed to act on his complaints and failed to order that a hearing be held in his custody matter and that a hearing not be held on his child support matter.  A request to hold or cancel a hearing is "a function normally performed by a judge" and in making that request Mr. Watkins dealt with Judge Murphy in her judicial capacity.  Because Judge Murphy's challenged actions were taken in her judicial capacity, the 1996 amendment applies to bar Mr. Watkins' claim for injunctive relief.

The fact that Judge Murphy's actions were taken in her judicial capacity also serves to bar Mr. Watkins' claims for damages under the doctrine of judicial immunity. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." Azubuko, 443 F.3d at 303. Judicial immunity will apply even if a judge's action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump, 435 U.S. at 356 (internal quotation omitted). Here, Judge Murphy, as Supervising Judge of the Family Court, acted within the scope of her jurisdiction in hearing Mr. Watkins' complaints about his custody and child support matters. Judge Murphy's actions are therefore covered by judicial immunity and Mr. Watkins' damage claims against her are barred.

C   Claims against Ms. Elica Blocker

Mr. Watkins brings claims against Ms. Blocker in both her official and personal capacities. As discussed above in reference to the claims against Judge Murphy, the claims against Ms. Blocker in her official capacity must be dismissed as claims against the state, which are barred by the Eleventh Amendment and excluded by the text of § 1983 which limits claims to "persons." See Will, 491 U.S. at 71; Benn, 426 F.3d at 240; Callahan, 207

F.3d at 670 and discussion above at 9-10.  Claims against Ms. Blocker in her personal capacity, however, cannot be dismissed on this ground.

Ms. Blocker contends that the claims against her should be dismissed under the principles set out in Younger v. Harris, 401 U.S. 37 (1971).  Younger requires that federal courts abstain from interfering with on-going state civil proceedings except in extraordinary circumstances, in order to honor principles of comity and federalism.  Marran v. Marran, 376 F.3d 143, 154 (3d Cir. 2004).  Three requirements must be met for the Court to abstain under Younger: (1) there must be ongoing state judicial proceedings to which the federal plaintiff is a party and with which the federal proceeding will interfere; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise the federal claims.  Yang v. Tsui, 416 F.3d 199, 202 (3d Cir. 2005).

As to the first requirement, there are ongoing proceedings in the state custody matter to which Mr. Watkins is a party and with which this federal proceeding will interfere. Indeed, a primary goal of the plaintiff's suit is to ask this Court to interfere in the state court proceedings by obtaining an injunction order that a hearing be held on his custody petition

and that a hearing not be held on his child support proceedings. See Tr. of September 28, 2006, Hearing at 22-26.

As to the second Younger requirement, the state proceedings here implicate important state interests. Family law is generally considered an issue exclusively reserved to the states. See Moore v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.") (requiring Younger abstention where plaintiff sought an injunction regarding removing children from homes with suspected abuse); see also Yang (finding a traditional state interest in family law, but holding it was outweighed by a stronger federal interest in international relations concerning the Hague Convention on child abduction).

As to the third requirement, whether the state proceedings provide an opportunity to raise the federal claims, they do so here with respect to the injunctive relief sought. Mr. Watkins could raise in Family Court both his request to have a hearing on his custody petition and to have the proceedings on his child support stayed. With request to Mr. Watkins' claims for damages, however, the state court custody proceedings do not provide an opportunity to raise the claims in this lawsuit. The purview of the Family Court does not extend to damage claims for deprivations of due process.

The Court therefore finds that the requirements for Younger abstention are met with respect to Mr. Watkins' request

for injunctive relief.  Mr. Watkins' request for an injunction expressly seeks to have this Court interfere with pending state proceedings concerning child custody matters traditionally reserved to the states, and the relief Mr. Watkins seeks through his injunction can be granted by the Family Court.  The requirements of Younger abstention, however, are not met with respect to Mr. Watkins' damage claims.³  Allowing those claims to proceed in federal court will not interfere with the pending state court custody proceedings and such claims cannot be brought in Family Court.

      An appropriate Order follows.

---

³ It is unclear whether Younger abstention can apply under any circumstances to claims for money damages.  The Court of Appeals for this Circuit has recently suggested that it cannot. Marron, 376 F.2d at 154-55 (describing prior U.S. Supreme Court cases as "indicat[ing] that abstention under Younger principles is not proper when damages are sought"); but see Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 413 (3d Cir. 2005) (analyzing whether to abstain from deciding a damage claim under Younger).

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
DONALD WATKINS, JR.            :    CIVIL ACTION
                               :
          v.                   :
                               :
                               :
ELICA BLOCKER, et al.,         :    NO. 06-3775
```

ORDER

       AND NOW, this 14th day of March, 2007, upon consideration of the Motion to Dismiss filed by the Honorable Margaret Theresa Murphy and the Pennsylvania Common Pleas Court, Family Court Division (Docket # 8) and the Motion to Dismiss filed by defendant Elica Blocker (Docket # 11), and the responses thereto, and after oral argument, IT IS HEREBY ORDERED that:

       1) The Motion to Dismiss filed by the Honorable Margaret Theresa Murphy and the Pennsylvania Common Pleas Court, Family Court Division (Docket # 8) is GRANTED.  All claims against Judge Margaret Theresa Murphy and the Pennsylvania Common Pleas Court, Family Court Division are dismissed.

       2) The Motion to Dismiss filed by defendant Elica Blocker (Docket # 11) is GRANTED as to all claims against Elica Blocker in her official capacity, as well as all claims against Elica Blocker in her individual capacity for injunctive relief. The Motion is DENIED as to claims against Elica Blocker in her

individual capacity for monetary relief.

                              BY THE COURT:

                              <u>/s/ Mary A. McLaughlin</u>
                              MARY A. McLAUGHLIN, J.